# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| BRIAN GERMAN, Individually and on Behalf of All Others Similarly Situated, | **Case No.: 4:18-cv-00100** |
| | Collective Action (29 U.S.C. § 216(b)) |
| v. | |
| HALLIBURTON COMPANY. | |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.     Brian German brings this lawsuit to recover unpaid overtime wages and other damages under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") from Halliburton Company ("Halliburton").

2.     Halliburton is an oil and natural gas exploration and production company operating worldwide and throughout the United States, including in Texas. To do so, Halliburton employs oilfield personnel to carry out its work.

3.     German and the other workers like him were typically scheduled for 12-hour shifts, 7 days a week, for weeks at a time. But these workers never received overtime for hours worked in excess of 40 hours in a single workweek.

4.     Instead of paying overtime as required by the FLSA, Halliburton paid these workers a daily rate with no overtime pay and improperly classified them as independent contractors.

5.     This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers under the FLSA.

### JURISDICTION AND VENUE

6.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

7.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District and Division.

8.    Halliburton is headquartered in this District and Division.

**THE PARTIES**

9.    From May to November 2017, German worked exclusively for Halliburton as a measurement while drilling operator ("MWD").

10.    German was paid a day-rate with no overtime compensation and was classified as an independent contractor.

11.    German brings this action on behalf of himself and all other similarly situated workers who worked for or on behalf of Halliburton as MWD operators, were classified as independent contractors and were paid under Halliburton's day-rate system.

12.    Halliburton paid each of these workers a flat amount for each day worked and failed to pay them overtime for all hours that they worked in excess of 40 hours in a workweek in accordance with the FLSA.

13.    German's written consent to be a party plaintiff is attached as Exhibit A.

14.    German represents a class of similarly situated MWDs under the FLSA pursuant to 29 U.S.C. § 216(b). The class sought to be certified is defined as:

> **All current and former measurement while drilling operators (MWDs) employed by, or working on behalf of, Halliburton Company in the past three years who were classified as independent contractors and paid a day rate.**

15.    The class members are referred to as "Putative Class Members."

16.    **Halliburton Company** is a Delaware corporation. It maintains its headquarters and principal place of business in this District and Division, and is therefore a Texas citizen. Halliburton may be served by service on its registered agent for service of process, **Capitol Corporate Services, Inc., 206 E. 9th St. Ste. 1300, Austin, TX 78701-4411**, or by any other method permitted by law.

## COVERAGE UNDER THE FLSA

17.     At all times hereinafter mentioned, Halliburton has been an employer within the meaning of section 3(d) of the FLSA, 29 U.S.C. § 203(d).

18.     At all times hereinafter mentioned, Halliburton has been part of an enterprise within the meaning of section 3(r) of the FLSA, 29 U.S.C. § 203(r).

19.     At all times hereinafter mentioned, Halliburton has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

20.     At all times hereinafter mentioned, German and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

## FACTS

21.     Halliburton is an oil and natural gas company operating worldwide and throughout the United States, including Texas, and employs oilfield personnel to carry out its work.

22.     Many of these individuals worked for Halliburton performing the same or substantially similar job duties as German and misclassified by Halliburton as so-called independent contractors in connection with Halliburton's oilfield operations.

23.     While exact job titles and job duties may slightly differ, German and Putative Class Members were subjected to the same or similar illegal pay practices for similar work.

24.     Specifically, Halliburton classified the Putative Class Members as independent contractors and paid them a flat sum for each day worked, regardless of the number of hours that they

worked that day (or in that workweek) and failed to provide them with overtime pay for hours that they worked in excess of 40 hours in a workweek.

25.     For example, German worked exclusively for Halliburton from approximately May to November 2017 as an MWD.

26.     Throughout his employment with Halliburton, German was classified as an independent contractor and paid on a day-rate basis.

27.     As an MWD, German's primary job duties included collecting and relaying data to other oilfield personnel for analysis.

28.     Halliburton typically scheduled German to work 12-hour shifts, for as many as 7 days a week.

29.     German worked well in excess of 40 hours each week while employed by Halliburton.

30.     The work German performed was an essential party of Halliburton's core business

31.     In fact, Halliburton employs MWDs as W-2 employees who perform the same duties.

32.     During German's employment with Halliburton while he was classified as an independent contractor, Halliburton and/or the company it contracted with exercised control over all aspects of his job.

33.     Halliburton did not require any substantial investment by German for him to perform the work required of him. Halliburton determined German's opportunity for profit and loss.

34.     German was not required to possess any unique or specialized skillset (other than that maintained by all other individuals working in his same job position) to perform his job duties.

35.     German worked exclusively for Halliburton, while working for Halliburton.

36.     Indeed, Halliburton and/or the company with which it contracted controlled all the significant or meaningful aspects of the job duties performed by German.

37.    Halliburton ordered the hours and locations German worked, tools used, and rates of pay received.

38.    Even though German often worked away from Halliburton's offices without the presence of a direct Halliburton supervisor, Halliburton still controlled all aspects of German's job activities by enforcing mandatory compliance with Halliburton's and/or its client's policies and procedures.

39.    No real investment was required of German to perform his job.

40.    More often than not, German utilized equipment provided by Halliburton and/or its client to perform his job duties.

41.    German did not provide the equipment he worked with on a daily basis. Halliburton and/or its clients made the large capital investments in buildings, machines, equipment, tools, and supplied in the business in which German worked.

42.    German did not incur operating expenses like rent, payroll, marketing, and insurance.

43.    German was economically dependent on Halliburton during his employment.

44.    Halliburton set German's rates of pay, his work schedule, and prohibited him from working other jobs for other companies while he was working on jobs for Halliburton.

45.    Halliburton directly determined German's opportunity for profit and loss. German's earning opportunity was based on the number of days Halliburton scheduled him to work.

46.    Very little skill, training, or initiative was required of German to perform his job duties.

47.    Indeed, the daily and weekly activities of the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created by Halliburton and/or its clients.

48.     Virtually every job function was pre-determined by Halliburton and/or its clients, including the tools to use at a job site, the data to compile, the schedule of work, and related work duties.

49.     The Putative Class Members were prohibited from varying their job duties outside of the pre-determined parameters.

50.     Moreover, the job functions of the Putative Class Members were primarily manual labor/technical in nature, requiring little to no official training, much less a college education or other advanced degree.

51.     The Putative Class Members did not have any supervisory or management duties.

52.     Finally, for the purposes of an FLSA overtime claim, the Putative Class Members performed substantially similar job duties related to servicing oil and gas operations in the field.

53.     German performed routine manual and technical labor duties that were largely dictated by Halliburton and/or its clients.

54.     German was not employed by Halliburton on a project-by-project basis. In fact, while German was classified as an independent contractor, he was regularly on call for Halliburton and/or its clients and was expected to drop everything and work whenever needed.

55.     All the Putative Class Members perform the same or similar job duties and are subjected to the same or similar policies and procedures which dictate the day-to-day activities performed by each person. The Putative Class Members also worked similar hours and were denied overtime as a result of the same illegal pay practice.

56.     The Putative Class Members all worked in excess of 40 hours each week and were often scheduled for 12 hour shifts for weeks at a time.

57.     Instead of paying them overtime, Halliburton paid the Putative Class Members a day-rate.

58.     Halliburton denied the Putative Class Members overtime for any hours worked in excess of 40 hours in a single workweek.

59.     Halliburton's policy of failing to pay overtime to its MWDs, including German, violates the FLSA because these workers are, for all purposes, employees performing non-exempt job duties.

60.     It is undisputed that the Putative Class Members are maintaining and working with oilfield machinery, performing manual labor, and working long hours in the field.

61.     Because German (and Putative Class Members) was misclassified as an independent contractor by Halliburton, he (and they) should receive overtime for all hours that he (and they) worked in excess of 40 hours in each workweek.

62.     Halliburton's day-rate system violates the FLSA because German and the Putative Class Members did not receive any pay for hours worked over 40 hours each week.

### FLSA VIOLATIONS

63.     As set forth herein, Halliburton violated the FLSA by failing to pay German and the Putative Class Members overtime under the day rate system for hours worked in excess of 40 in a workweek. 29 U.S.C. § 207(a); NMSA § 50-4-22.

64.      Halliburton knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay German and the Putative Class Members proper overtime compensation.

65.     Halliburton's failure to pay overtime compensation to German and the Putative Class Members was neither reasonable, nor was the decision not to pay overtime made in good faith.

66.     Accordingly, German and the Putative Class Members are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their rates of pay, plus liquidated damages or double damages, attorney's fees, and costs. 29 U.S.C. § 216(b).

## COLLECTIVE ACTION ALLEGATIONS

67.     German incorporates all previous paragraphs and alleges that the illegal pay practices Halliburton imposed on him were likewise imposed on the Putative Class Members.

68.     Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

69.     Numerous other individuals who worked with German indicated they were improperly classified as independent contractors, paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and/ or federal wage laws.

70.     Thus, Halliburton imposed a uniform practice or policy on German and the Putative Class Members regardless of any individualized factors.

71.     Based on his experiences and tenure with Halliburton, German is aware that Halliburton's illegal practices were imposed on the Putative Class Members.

72.     Putative Class Members were all improperly classified as independent contractors and not paid overtime compensation when they worked in excess of 40 hours per week.

73.     Halliburton's failure to pay wages and overtime compensation at the rates required by the FLSA result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

74.     German's experiences are therefore typical of the experiences of the Putative Class Members.

75.     The specific job titles or precise job locations of the various Putative Class Members do not prevent class or collective treatment.

76.     German has no interest contrary to, or in conflict with, the Putative Class Members. Like each member of the proposed classes, German has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

77.     All of the Putative Class Members, regardless of their precise job requirements or rates of pay, are entitled to be properly compensated for all hours worked in excess of 40 hours per week.

78.     Even if the issue of damages were individualized in character, nothing detracts from the common nucleus of liability facts.

79.     The Putative Class Members are similarly situated in all relevant respects. While their precise job duties might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime.

80.     The Putative Class Members are all blue-collars workers entitled to overtime after 40 hours in a week.

81.     Like German, the Putative Class Members work long hours and deserve to be paid in accordance with the law.

82.     Absent this action, many Putative Class Members likely will not obtain redress of their injuries and Halliburton will reap the unjust benefits of violating the FLSA.

83.     Furthermore, even if some of the Putative Class Members could afford individual litigation against Halliburton, it would be unduly burdensome to the judicial system.

84.     Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

### JURY DEMAND

85.     German demands a trial by jury.

### RELIEF SOUGHT

86.     WHEREFORE, German prays for judgment against Halliburton as follows:

(a)     For an order certifying this case as a collective action for the purposes of the FLSA claims;

(b)     For an order finding Halliburton liable for violations of the FLSA with respect to German and all Putative Class Members covered by this case;

(c)    For a judgment awarding all unpaid wages, liquidated damages, and/or penalty damages, to German and all Putative Class Members covered by this case;

(d)    For a judgment awarding German and all Putative Class Members covered by this case their costs of this action;

(e)    For a judgment awarding German and all Putative Class Members covered by this case their attorneys' fees;

(f)    For a judgment awarding German and all Putative Class Members covered by this case pre- and post-judgment interest at the highest rates allowed by law; and

(g)    For all such other and further relief as may be necessary and appropriate.

Respectfully submitted,

*/s/ Matthew S. Parmet*

By: _____

Richard J. (Rex) Burch
Texas Bar No. 24001807
S.D. Tex. ID No. 21615
Matthew S. Parmet
Texas Bar No. 24069719
S.D. Tex. ID No. 1076547
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Telephone: (713) 877-8788
Telecopier: (713) 877-8065
rburch@brucknerburch.com
mparmet@brucknerburch.com

Michael A. Josephson
Texas Bar No. 24014780
S.D. Tex. Id. No. 27157
**JOSEPHSON DUNLAP LAW FIRM**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Telephone: (713) 352-1100
Telecopier: (713) 352-3300
mjosephson@mybackwages.com

**Attorneys for Plaintiff**